Donald A. Dyer
25959-034
P.O. BOX 34550
Memphis, TN 38184-0550

U. S. DISTRICT COURT
Eastern District of Louisiana

FILED  MAY 2 4 2010

LORETTA G. WHYTE
Clerk

UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF LOUISIANA

| | |
|---|---|
| UNITED STATES OF AMERICA ] | Case No.: 98-00057-005   98-57, B |
| ] | |
| v. ] | MOTION TO DETERMINE IF AMENDMENT 503 |
| ] | IS CLARIFYING OR SUBSTANTIVE PURSUANT |
| ] | TO U.S.S.G. §1B1.11(b)(2) and 18 U.S.C. |
| DONALD A. DYER ] | 3582(a) |
| a/k/a "Blabber" ] | |

TO THE HONORABLE COURT:

Donald A. Dyer ("Petitioner") requests this Honorable Court to determine if Amendment 503 to the United States Sentencing Guidelines Manual ("USSG") is a clarifying or substantive amendment pursuant to USSG §1B1.11(b)(2) and 18 U.S.C. §3582(a)

Petitioner requests the Court to determine whether Amend. 503 is clarifying or substantive, and, if the court determines that this amendment is clarifying, then for the court to apply it towards the determination of his sentence.

## II. BACKGROUND

The grand jury for the Eastern District of Louisiana indicted eight persons, including the petitioner, in a three count indictment. Only the first count named petitioner, charging him with being part of a conspiracy to possess with intent to distribute more than one hundred grams of herion, in violation of 21 U.S.C. §841 and 846. The remaining counts were charged against other co-conspirators and not the petitioner. Pleas of not guilty were entered.

TENDERED FOR FILING

A superceding indictment was filed on May 29, 1998, naming additional persons,

MAY 2 4 2010
U.S. DISTRICT COURT
Eastern District of Louisiana
Deputy Clerk

___ Fee _____
___ Process _____
_X_ Dktd _____
_X_ CtRmDep ____
    Doc No. ____

but keeping the charge against the petitioner the same. Petitioner pled guilty to the indictment on the one count pertaining to him on October 2,1998. Petitioner was sentenced to 480 months to be followed by a five year term of supervised release. On appeal,the Fifth Circuit vacated the sentence and remanded for resentencing, holding that although the district court's finding that the petitioner participated in the murders was not clearly erroneous,the murders did not constitute "relevant conduct." <u>US v. Dyer</u>,No.99-30740(5th Cir.1999)(unpublished opinion).

On October 18,2000,Petitioner was resentenced to 400 months,to be followed by five years of supervised release.

Mr.Dyer now requests this Honorable Court to determine whether Amend.503 clarified or made a substantive change to §1B1.3,pursuant to USSG §1B1.11(b)(2) to determine his actual relevant conduct and his criminal history,as it was based on uncharged conduct.

### III. ARGUMENT

Section 3582(a) authorizes a defendant to move a court for a reduction of his sentence when an amendment has the effect of lower his sentencing range.

#### A. AMENDMENT 503--CLARIFYING OR SUBSTANTIVE

The Sentencing Commision ("Commission") adopted Amend.503,which modified §1B1.3 governing "relevant conduct". This amendment instructed that a sentencing court should take into account the past conduct of co-conspirators when determining the scope of the defendant's conduct. Did Amend.503 clarify the operation of §1B1.3 by stating that relevant conduct attributable to a co-conspirator "does not include the conduct of members of a conspiracy prior to the defendant joining the conspiracy, even if the defendant knows of that conduct[?]" USSG App.C amend.503.

Did Amend.503 revise the actual language of §1B1.3,or rather,amneded the commentary to that provision by inserting an additional paragraph of instruction to App. Note 2? The addendum explains:

> A defendant's relevant conduct does not include the conduct of

2

members of a conspiracy prior to the defendant's joining the conspiracy,even if the defendant knows of that conduct (<u>e.g.</u>, in the case of a defendant who joins an ongoing drug distribution conspiracy knowing that it had been selling two kilograms of cocaine per week,the cocaine sold prior to the defendant joining the conspiracy is not included as relevant conduct in determining the defednat's offense level). Amend. 503 offers an explanation of how a conspirator's relevant conduct may,or,more accurately,may not be calculated under section 1B1.3. Section 1B1.3 is the only section of the guidelines affected,and only a single paragraph is added to the relevant commentary.

Amend.503 App. C.

From 1989 to 1994,the language of section 1B1.3 was reorganized and expanded, and its commentary doubled in size. Pertinent to this case,the language bearing upon co-conspirator conduct for which a defendant may be held accountable evolved from a single sentence in section 1B1.3's commentary in the pre-1989 Guidelines into the integral part of the text that it had become by 1994,and which it remains today. <u>Compare</u> USSG §1B1.3 cmt. n.1(1988),with USSG §1B1.3 cmt. n.2(1994);USSG § 1B1.3 cmt. n.2(2006).

The language of Application Note 1 was revised on Nov.1,1989,clarifying that a defendant shall only be held accountable for co-conspirator conduct "that was reasonably foreseeable by the defendant," and provided several illustrations of relevant conduct. USSG app. C amen.78(1989). See: USSG app. C amend. 439(1992); USSG §1B1.3(a)(1)(B) and cmt.n.2 (1992).

The history of section 1B1.3 demonstrates that as the provision evolved,the Commission continued to clarify the meaning of co-conspirator language first introduced in January 1988. See: USSG app. C amend.3 (1988). In fact,that initial reference to co-conspirator conduct for which a defendant is otherwise accountable is the only instance in which section 1B1.3--in either its commentary or text--includes any reference to knowledge of a co-conspirator's conduct. Therefore,the early reference to knowledge is at the very least ambiguous and suseptible to a variety of interpretations.

3

Given the ambiguity of the reference to knowledge in the language of the pre-1989 Guidelines commentary to section 1B1.3, the fact that this language was excised in 1989 in favor of solely forward-looking language, and the fact that this language never appeared in the text of section 1B1.3, did Amendment 503 work a substantive change to the language of the Guidelines or merely effected a clarifying change?

Petitioner requests this Honorable Court to determine whether Amend.503 merely clarified the previously ambiguous language of section 1B1.3 or made a substantive change to the guideline. This determination would have effect on the determination of petitioner's criminal history determination as it was determine that petitioner's criminal history was under-represented by uncharged conduct that petitioner was held accountable for.

In <u>United States v. Allen</u>, 488 F.3d 1244(10th Cir.2007), that court held that the district court possibly elavated the sentence based on conduct that he may have committed given the chance, but went on to say that, "we think it violates the Constitution's basic guarantee that a defendant shall not be punished for "crimes" unless tried before and convicted by an impartial jury. See U.S. Const. art.III,§2(The Trial of all Crimes, except in cases of Impeachment, shall be by jury..."). U.S. Const. amend.VI ("In all criminal prosecutions, the accused shall enjoy the right to a speedy and public trial, by an impartial jury..."). It may be tempting to depart from that principle where, as here, the comtemplated deeds are horrific beyond measure, but it remains a fact that the only crime for which Mr.Allen was charged or convicted was distribution of a controlled substance.") 488 F.3d at 1260,1261.

As with that case, Mr.Dyer has been held accountable for conduct that is not part of the offense he is charged with, namely, distribution of herion. Section 4A1.3 has been used as a basis to enahnce Mr.Dyer's sentence and a review of that section reveals that the uncharged crimes of attempted murder and murder have never been filed against him and never will be. Mr.Dyer recently received a newspaper clipping

4

naming the individual who is now charged with those very crimes that Mr.Dyer's sentence has been enhanced for. See: Exhibit A.

The relatedness principle is fundamental because courts are committed to impose sentences based on the seriousness of the actual conduct proven or admitted. See: 18 U.S.C. §3553(a)(1). The only connection to these crimes are that Mr.Dyer spoke about them,but did not actually,have any part in these crimes. Merely commenting about them,whether truthfully or not,does not make him accountable for these crimes.

Those crimes and the crime for which petitioner was charged with are drastically different to the other and the parameters of section 4A1.3 do not cover such diverse crimes because of their difference in the nature of the act to commit them. Section 4A1.3 is based on uncharged conduct similar to the charged conduct for which a defendant is charged with. At the time,Mr.Dyer's comments about these crimes tended to lead one to believe that he had personal knowledge of these crimes,but in actuality, time has now shown that he did not have the personal knowledge of these committed crimes as Exhibit A readily verifies.

It may be significant that,prior to 2003,the Guidelines Manual expressly stated that a district court was "not limited to" the information in the five categories. The Commission dropped these words from the Manual in 2003 when it amended §4A1.3 to comport with the PROTECT ACT,which directed the Commission to "substantially reduce[]" the incidence of downward departure. Pub.L. 108-21. Nothing in the commentary regarding this amendment suggests that the change was meant to transform the list into an exhaustive one, USSG App.C,Vol II,Amend.365,but the language might be read that way.

In the case at bar,Mr.Dyer's comments about those crimes may have tended to lead one to believe that he had intimate knowledge of those crimes,but now,that assumption is proved to be invalid. In United States v. Cade,279 F.3d 265(5th Cir. 2002),the Court held,"Here,the district court considered Cade's state sentences as

5

as relevant conduct under §1B1.3. The court then also used these same sentences to depart upward under §4A1.3 by treating the sentences as part of Cade's criminal history. By expressly relying on sentences considered as relevant conduct to support a criminal history category departure, the district court misapplied the guideline." 279 F.3d at 272,273. See: United States v. Hunerlach, 258 F.3d 1282,1287(11th Cir. 2001); United States v. Aderholt, 87 F.3d 740(5th Cir.1996).

To Mr. Dyer's point of view, Amendment 503 clarified that a sentencing court should not take into account the past conduct of co-conspirator's conduct for which he was not a participant in in determining his relevant conduct or his representation of his criminal history. The "reliable information" used to enhance his sentence is now shown not to be "reliable" to justify the departure in his sentence.

In summary, Mr. Dyer requests this Honorable Court to determine whether Amend. 503 is a clarifying or substantive change to section 1B1.3. Mr. Dyer's comment's about uncharged crimes is now shown not to be "reliable" because the New Orleans Police Department has now formerly charged an individual with those crimes and are in the process of court proceedings charging those crimes against a specific named person they are holding accountable for those crimes. These crimes should not be used as a basis for enhancing Mr. Dyer's criminal history as it is now shown, he was not a participate in these crimes and to hold him accountable would be a grave injustice.

## CONCLUSION

A modification of the sentence would be authorized under 18 U.S.C. §3582(a) and USSG §1B1.11(b)(2). 28 U.S.C. §991(b)(1)(B) promotes that courts should impose sentences in accord with the SRA's goal of sentencing defendant's consistently using the guidelines. To promote consistency, Mr. Dyer requests this Court to determine whether Amend.503 clarified or substantiaaly changed §1B1.3 and to apply the guideline to determine his criminal history.

Dated this 20 day of May, 2010.

By: *Donald A. Dyer*
Donald A. Dyer

## CERTIFICATE OF SERVICE

I hereby certify that a copy of the foregoing has been served on counsel for the Government ( Mr.Robert J. Boitman,Hale Boggs Building,2nd Floor, 501 Magazine Street,New Orleans,LA 70130 ) by mailing same this 20 day of May,2010.

                                                                                             Donald A. Dyer  
                                                                                              Donald A. Dyer

ballot.

The three chairmen of the NORD Citizens Advisory Panel, Rod West, Roy Glapion and Bobby Garon are also on the Landrieu transition committee,

See **RECREATION**, B-2

## Arrest made in 1997 murder

### Teen was killed in Central City

**By Danny Monteverde**
Staff writer

New Orleans police on Monday made an arrest in a 12-year-old murder case that left a teenager dead and another man injured in Central City in 1997.

Alton Patterson, 37, was booked with a count of attempted first-degree murder and a count of first-degree murder. Police allege he gunned down 17-year-old Colon Cains and shot an unidentified 22-year-old man in the back in October 1997.

Investigators said at the time that Cains and the man were riding in a car about 6:30 p.m. in the 2500 block of LaSalle Street when they were ambushed in a spray of gunfire.

The driver, who was shot several times in the back, veered onto Second Street and crashed before running into a nearby church, where he interrupted a service with his cries for help, police said at the time.

Police found Cains in the car with a gunshot wound to his head. He was pronounced dead at a local hospital a short time later.

Detective Decynda Barnes,

See **ARREST**, B-2



PHOTOS BY ELIOT KAMENITZ / THE TIMES PICAYUNE

At the site of Charles Lamarque slave market on Common Street near Baronne Street, historian Walter Johnson holds up a copy of a painting of that location before the Civil War.



Walter Johnson, a Harvard historian who is an expert on the slave trade shows a group of scholars, in town for a Southern literature conference, the former site of Thomas Fosters slave market at 216 Baronne Street. About 150 people would be crowded into a high-walled pen the size of a house lot, he said.

## St. John parents are indict

### They're accused of fatally beating son

**By Littice Bacon-Blood**
River Parishes bureau

For the third time in two years, Erroll and Tonya Victor were indicted Monday and charged with murder in the death of their 8-year-old son, M.L. Lloyd III.

The child was pronounced dead at River Parishes Hospital in LaPlace on April 1, 2008, after authorities say his mother, stepfather and older stepbrother brought him to the emergency room unconscious.

St. John the Baptist Parish sheriff's investigators and state prosecutors have maintained that M.L. died after being severely whipped and beaten at h[ome by] his parents, a charge his [parents] have steadfastly denied.

A grand jury first in[dicted] the Victors on charges [of first] degree murder in 2008. [Those] charges were downgraded [to sec]ond-degree murder in a [second] indictment, which the gra[nd jury] returned in September.

But state District Jud[ge Mad]eline Jasmine threw [out that] indictment, ruling it sh[ould]

EXHIBIT A

## Suspect has long record

**ARREST, from B-1**

who reinvestigated the case, was able to identify Patterson through a witness who recently came forward, said officer Hilal Williams, an NOPD spokeswoman. The witness's information matched the information that was in the original report, Williams said.

Patterson has a long history of run-ins with law enforcement in New Orleans. His first arrest was in March of 1990 at the age of 17, court records show. Since then, he has been in jail at least 16 other times.

Two arrests included being booked and tried for attempted second-degree murder. In a 1995 case, Patterson pleaded guilty to the charge. In a separate case two years ago, the district attorney's office dropped the charges, according to court records.

. . . . . . .

Danny Monteverde can be reached at dmonteverde@timespicayune.com or 504.826.3310.

---

Lynnette Thomas, a native of eastern New Orleans who is an American studies scholar at the University of Massachusetts Boston, said she was glad the tour was available in a city where people need to pay more attention to slavery and its ramifications because of slavery's pervasive role in New Orleans' growth — ty" that each person being sold ring them to the Citizens Advisory Panel's recommendations laid out on the Web site www.NORDcap.org.

"Now," he said, "those laws govern things like used cars."

. . . . . . .

John Pope can be reached at jpope@timespicayune.com or 504.826.3317.

---

was of good character and free from disease.

When Joe Bean, the Louisiana NAACP recreation director, said New Orleans should look at Baton Rouge's model for parks and recreation, West assured him that the pending proposal took many best practices from Baton Rouge.

Glenn Trotter, a NORD volunteer for 30 years who participated in the advisory panel process last year, said the reform effort is about limiting politics and increasing transparency.

That panel proposed that the area's university presidents appoint the new commission's members, with the mayor, the City Council, the New Orleans Saints and New Orleans Hornets making nominations.

Trotter and West noted some sensitivity to a potential move to "privatize" the city's recreational facilities. Both said the new body, if approved by voters, would be a public entity, subject to public scrutiny. Still, they also mentioned a desire to get more

ers' concerns Monday by referring them to the Citizens Advisory Panel's recommendations laid out on the Web site www.NORDcap.org.

she said. "I'l NORD has value for al today, thoug the '70s exp our kids nov rowing thei said someth reach out to get them mo

Bean, the native, grev now lives in he drove fi Monday to tee to help he knew.

"NORD did," he said Landrieu tee is seeki complaints a on parks ai this week: t Behrman N the West F from 6 to 8 YMCA in C

. . . . . . .

David Hammer dhammer@tim 504.826.3322.

Donald Dyer # 25959-034
FCI Memphis
P.O. Box 34550
Memphis, TN 38184-0550

7009 1410 0000 2471 1951

CERTIFIED MAIL

Legal Mail

Clerk's Office
United States District Court
Eastern District of Louisiana
New Orleans, LA
70130







